**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
───────────────────────────────

**SONIA DOTSON,**

                                  **Plaintiff,**

         **vs.**                                      **5:18-cv-750**
                                                      **(MAD/ATB)**

**CITY OF SYRACUSE, FRANK FOWLER,**
**DAVID BARRETT, JOHN HAMBLIN, and**
**RICHARD TRUDELL,**

                                  **Defendants.**
───────────────────────────────

**APPEARANCES:**                         **OF COUNSEL:**

**BOSMAN LAW FIRM, L.L.C.**              **A.J. BOSMAN, ESQ.**
201 W. Court Street
Rome, New York 13440
Attorney for Plaintiff

**CORPORATION COUNSEL**                  **KRISTEN E. SMITH, ESQ.**
233 E. Washington St.                    **KHALID BASHJAWISH, ESQ.**
City Hall, Rm. 300
Syracuse, New York 13202
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

       Before the Court is the latest in a series of employment discrimination cases against the

City of Syracuse brought by Plaintiff Sonia Dotson.[1]  This action is brought under 42 U.S.C. §§

1981 and 1983, the Rehabilitation Act, and the New York State Human Rights Law

───────────────

       [1] *Dotson v. City of Syracuse, et al.*, No. 5:04-cv-1388 ("*Dotson I*"); *Dotson v. City of
Syracuse et al.*, No. 5:11-cv-620 ("*Dotson II*").

("NYSHRL"). Defendants have moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim and collateral estoppel. *See* Dkt. No. 22. Defendants move to dismiss all nine claims for failure to establish causation between her termination and Defendants' actions. They further assert that paragraphs 16, 17, and 18 of the Complaint must be stricken pursuant to res judicata.

## II. BACKGROUND

Plaintiff is an Hispanic female who at all times relevant was an employee of the City of Syracuse. *See* Dkt. No. 17 at ¶ 5. Plaintiff claims that she "was both a member of a protected class as Hispanic and female and disabled as unable to work and engaged in protected activities, *inter alia*, by engaging in litigation and pursuing redress of grievances and requesting an accommodation in the form of a delay in the arbitration proceedings surrounding her termination." *Id.* Plaintiff further alleges that she "complained of discrimination, retaliation, and a hostile work environment to the Defendant City of Syracuse and was subjected thereafter to additional discriminatory and retaliatory conduct by defendants." *Id.*

At all relevant times, Defendant Fowler was the Chief of the City of Syracuse Police Department ("Department") and was responsible for the training, supervision, discipline, and conduct of the other named Defendants. *See id.* at ¶ 9. Defendant Fowler was responsible for the termination of employees, and acted jointly with Defendants Barrette and Hamblin to terminate Plaintiff's employment. *Id.* Defendant Barrett was the First Deputy Chief of Police of the Department during the times relevant to this suit. *Id.* at ¶ 10. Defendant Hamblin was a Captain of the Department and was Lieutenant Supervisor of Human Resources and was therefore Plaintiff's supervisor. *Id.* at ¶ 11. Defendant Trudell was also a Captain of the Department and allegedly worked in concert with the other named Defendants to watch Plaintiff's movements and

report to Defendant Barrett. *Id*. at ¶ 12.

Plaintiff alleges that throughout the course of her employment with the Department, she was subjected to discrimination, retaliation and other unfair actions because of her sex, race, disability, national origin, and/or because of her assertion of contractual, civil, and constitutional rights. *Id*. at ¶ 16. Prior lawsuits have sought redress for disparaging comments regarding women and minorities, the viewing of pornographic material, heightened scrutiny, counseling and disciplinary memoranda, suspensions without pay, Internal Affairs investigations, referral for criminal prosecution, eavesdropping, surveillance of Plaintiff's computer, and false accusations of on and off-the-job conduct. *Id.*

Plaintiff learned, during the course of prior proceedings in August 2014, that Defendants Trudell engaged in surreptitious surveillance spanning a year or more. *Id*. at ¶ 17. She further learned that Defendant Trudell used sexual and racial slurs about women and minorities. *Id*. at ¶ 18. Plaintiff reported this to Defendant Fowler on August 18, 2014. *Id*. at ¶ 18. Plaintiff alleges that as a result of this news, she was unable to return to work and suffered extreme mental distress. *Id.* Further, by letter dated December 3, 2014, Plaintiff advised Defendants that she would be unable to return to work and that she had recently been hospitalized. *See id.* at ¶ 19. In this same letter, Plaintiff claims that she "advised Defendants to refrain from direct contact with Plaintiff and to communicate through counsel." *Id.*

Thereafter, Plaintiff alleges that, "Defendants proceeded to schedule Plaintiff for a 'pre-termination' hearing for February 9, 2015 and sent notification of same directly to Plaintiff, rather than her attorney exacerbating her condition." *Id.* at ¶ 20. By letter dated February 8, 2015, Plaintiff's counsel "advised counsel for the City of Syracuse that, *inter alia*, Plaintiff remained unable to return to work but that she had managed to secure an appointment with a doctor at

Upstate Outpatient Psychiatric Clinic. The letter specifically advised that while Plaintiff was unable to participate herself, her Union representatives were willing to participate but were unavailable on February 9, 2015, the unilaterally selected date for Plaintiff's 'pre-termination' hearing." *Id.* at ¶ 21. Therefore, the letter requested that the hearing be adjourned to a later date. *See id.* Despite Plaintiff's request for a "reasonable accommodation," the pre-termination hearing proceeded in her absence, which resulted in her termination. *See id.* at ¶ 22.

### III. DISCUSSION

**A.   Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).

Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**B.  Adverse Employment Action**

Because this issue permeates all of Plaintiff's claims, the Court will first turn to whether Plaintiff has satisfactorily alleged an adverse employment action upon which she may predicate her claims. An adverse employment action includes any "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (quotation omitted). "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quotation omitted). "A change that is 'materially adverse' could consist of, inter alia, 'a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (quoting *Galabya*, 202 F.3d at 640).

"District courts within the Second Circuit have often found . . . 'that reprimands, threats of

disciplinary action, and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation.'" *Abraham v. Potter*, 494 F. Supp. 2d 141, 147-48 (D. Conn. 2007) (quoting *Honey v. Cnty. of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002)). Consequently, the issuance of a "counseling memorandum" and a "notice of discipline," without any further evidence regarding a materially adverse effect thereof, is not an adverse employment action as a matter of law. *Weeks v. New York State* (Div. of Parole), 273 F.3d 76, 86 (2d Cir. 2001), *abrogated on other grounds by*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108-14; *see also Sanders*, 361 F.3d at 756 (citing *Weeks*, 273 F.3d at 86) (holding that a negative performance evaluation, on its own, is insufficient to constitute an adverse employment action as a matter of law). Furthermore, interrogations alone are insufficient as a matter of law to establish an adverse employment action. *See Shanahan v. New York*, No. 10-Civ.-0742, 2011 WL 223202, *10 (S.D.N.Y. Jan. 24, 2011) (citing *Eugenio v. Walder*, No. 06-Civ.-4928, 2009 WL 1904526, *10-*11 (S.D.N.Y. July 2, 2009)).

Plaintiff alleges two "adverse employment actions." The first is that Defendants "subjected plaintiff to extensive, intrusive, and secret retaliatory and discriminatory surveillance by conduct including but not limited to: surreptitiously recording and monitoring her daily movements, persons she spoke with, computer usage, statements and expressions she made, usage of sick time, and other invasions of Plaintiff's privacy." *See* Dkt. No. 17 at ¶ 17. Plaintiff alleges that these "unlawful surreptitious actions extended over a period over a year or more," and that these constitute adverse employment action. *Id.* While this alleged conduct may very well intrude upon Plaintiff's privacy, these are not actions related to her employment. She alleges no loss of wage, no demotion, no reduction of responsibilities, or any loss of benefits as would be

required to constitute an adverse employment action. These allegations are thus not adverse employment actions as a matter of law.[2]

The other alleged adverse employment action is Plaintiff's termination on February 9, 2015. *See* Dkt. No. 17 at ¶ 15. Termination is an adverse employment action and only this second allegation may serve as basis for her employment-related claims. *See, e.g.*, *Sharpe v. Utica Mut. Ins. Co.*, 756 F. Supp. 2d 230, 246 (N.D.N.Y. 2010) (finding termination was a materially adverse employment action).

## C.    Res Judicata and Issue Preclusion

The doctrine of res judicata, or claim preclusion, "preclude[s] later litigation if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985) (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948)). Additionally, once a final judgment has been entered by a court of competent jurisdiction, "the parties to the suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Id.* at 190 (internal quotation marks omitted). "Such a judgment precludes the subsequent litigation both of issues actually decided in determining the claim asserted in the first action[] and of issues that could have been raised in the adjudication of that claim." *Colonial Acquisition P'ship v. Colonial at Lynnfield, Inc.*, 697 F. Supp. 714, 717-18 (S.D.N.Y. 1988) (quoting *Nat'l Labor Relations Bd. V. United Techs. Corp.*, 706 F.2d 1254, 1259 (2d Cir. 1983)).

---

[2] Moreover, as discussed below, much of this alleged conduct has been the subject of previous lawsuits that Plaintiff has brought against Defendants.

Issue preclusion prevents the "relitigation of issues actually litigated and necessary to the outcome of a prior action." *Alfadda v. Fenn*, 966 F. Supp. 1317, 1325 (S.D.N.Y. 1997) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)). This doctrine brings an end to litigation "once the party to be bound has had a fair opportunity to litigate the issue," and promotes judicial economy. *Id.* at 1327.

Paragraph 16 of the Amended Complaint alleges the general conduct that gave rise to Plaintiff's prior actions. *See* Dkt. No. 17 at ¶ 16. To the extent that any of this conduct gave rise to a cause of action, these issues were fully litigated or are being litigated in her other lawsuits, and Plaintiff may not re-offer these allegations in support of another claim. *See generally Dotson v. City of Syracuse*, No. 5:04-cv-1388, 2009 WL 2176127, *3 (N.D.N.Y. July 21, 2009) ("*Dotson I*"). For example, the viewing of pornographic material at work was at issue in her previous lawsuits and was fully addressed there. *Id.*

Plaintiff alleges the conduct that gives rise to her new cause of action in paragraphs 17 and 18 of the Amended Complaint—namely, the conduct of which she became aware during her August 2014 deposition. *See id.* Plaintiff alleges that during the August 2014 deposition, she learned that her immediate and former supervisors had "used disparaging terms about women and minorities including, but not limited to such terms such as 'Bitch', 'Nigger' and/or 'Spic' to refer to women, African Americans and Hispanics while on and off duty, in the presence of co-workers and in public." *See* Dkt. No. 17 at ¶ 18. These comments are of course disturbing, degrading, and totally unacceptable. The significance of these comments to Plaintiff's case have already been or are already being litigated in other matters. Here, there is no evidence—in fact, there is no allegation—that these comments were ever directed at Plaintiff and there is no allegation that they were even made in her presence. *See Dotson I*, 2009 WL 2176127, at *2. Plaintiff cannot

continue to recycle factual allegations by asserting that she learned of them at different times. Even if the Court were to consider these comments despite having addressed them in previous cases, because there is no allegation that these statements were directed at Plaintiff, they do not support an inference of discrimination against her under all the circumstances surrounding her termination.

Further, because these comments necessarily took place before the August 2014 deposition, they are barred by the statute of limitations when alleged as adverse employment actions in and of themselves. *See, e.g.*, *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011) (applying 4 year statute of limitations to employment discrimination cases).

The facts alleged in paragraphs 16 and 18 have already been asserted in another lawsuit. Plaintiff cannot rely upon the same underlying facts here for the same claims. She may only rely on these allegations to support new claims. Because the Court has found that Plaintiff's termination is the only allegation sufficient to constitute an adverse employment action, the question becomes whether the surveillance allegations give rise to an inference of discrimination with respect to her termination, or whether her complaint regarding such surveillance gives rise to an inference of retaliation with respect to her termination.

## D.    First and Sixth Claims - NYSHRL and § 1981 Discrimination

To establish a *prima facie* case of discrimination under section 1981 and the NYSHRL, "a plaintiff must demonstrate: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) circumstances surrounding the employment action that give rise to an inference of discrimination." *Fahrenkrug v. Verizon Servs. Corp.*, 652 Fed. Appx. 54, 56 (2d Cir. 2016) (citing *Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106-07 (2d Cir. 1989)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03

(1973).

Discrimination claims are evaluated pursuant to the burden-shifting analysis articulated in *McDonnell Douglas*, 411 U.S. at 802-03; *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 316 (2004) (holding that the *McDonnell Douglas* framework applies to discriminatory discharge claims brought pursuant to the NYSHRL) (citations omitted).

> Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. 411 U.S. at 802, 93 S. Ct. 1817. If the plaintiff does so, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for its action. *Id.* Once such a reason is provided, the plaintiff can no longer rely on the *prima facie* case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination.

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)). To rebut the articulated justification for the adverse action, "the plaintiff must show *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 n.4 (1993) (internal quotations omitted). Although a plaintiff is not required to allege facts establishing a *prima facie* case of discrimination to survive a motion to dismiss, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), a plaintiff must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *see also Rullan v. N.Y.C. Sanitation Dep't*, No. 13 Civ. 5154, 2014 WL 2011771, *6 (S.D.N.Y. May 16, 2014) (holding that although a plaintiff need not allege each element of a prima facie claim to survive a motion to dismiss, the facts alleged must support a plausible inference of discrimination on the basis of a protected characteristic).

A plaintiff may create an inference of discrimination by showing disparate treatment, *i.e.*,

by showing that his employer "treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). To do so, the plaintiff must show that he was "'similarly situated in all material respects'" to the individuals with whom he seeks to compare himself. *Id.* (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).

Initially, the Court finds that Plaintiff's claims brought pursuant to Section 1981 are subject to dismissal because "§ 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989); *see also Sosa v. N.Y.C. Dep't of Educ.*, ___ F. Supp. 3d ___, 2019 WL 1323980 (E.D.N.Y. Mar. 25, 2019) (citing cases). As such, the Court grants Defendants' motion to dismiss insofar as it seeks dismissal of Plaintiff's claims brought pursuant to 42 U.S.C. § 1981.

Here, Plaintiff has simply alleged that, "[o]n information and belief, persons who are not minorities or who have not complained of discrimination or retaliation were not and are not subjected to such treatment or scrutiny." *See* Dkt. No. 17 at ¶ 17. Plaintiff has not pointed to any similarly situated employee or conduct. She has simply declared that other employees generally who are not minority women are not put under surveillance. This entirely conclusory allegation is insufficient to defeat Defendants' motion to dismiss. *See D.F. ex rel Finkle v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 386 F. Supp. 2d 119, 128 (E.D.N.Y. 2005) (citation omitted) (dismissing claim where plaintiff alleged that "upon information and belief, other students attending middle school within the School District who engaged in similar or more severe conduct . . . received suspensions of a lesser duration," but failed "to identify any similarly situated individual or any set of facts in support of his allegations of disparate treatment"); *Yan v. Ziba Mode Inc.*, No. 15-cv-47, 2016 WL 1276456, *5 (S.D.N.Y. Mar. 29, 2016); *Kajoshaj v. City of New York*. No. 11-

cv-4780, 2013 WL 249408, *2 (E.D.N.Y. Jan. 23, 2013), *aff'd*, 543 Fed. Appx. 11 (2d Cir. 2013) (holding that the plaintiffs' allegation that "[u]pon information and belief, non-Muslim students from families of non-Albanian origin at the [ ] Academy received test scores and grades similar to [the infant plaintiff] in the fifth grade class for the 2009–2010 school year and were promoted to the sixth grade by the [ ] Academy [,]" absent any "specific factual allegations concerning th[o]se allegedly similarly situated individuals, was "a bare conclusion [that] cannot survive a motion to dismiss").

As discussed above, Plaintiff has alleged that she was terminated from her employment and subjected to various discriminatory and retaliatory acts because of her "sex and/or race and/or disability and/or national origin.".  Presumably, Plaintiff maintains that her job performance was satisfactory, though the Amended Complaint is silent on the issue.  The issue then becomes whether Plaintiff has alleged circumstances surrounding her termination that give rise to an inference of discrimination.  Plaintiff's conclusory allegations regarding the general atmosphere of her workplace fail to create an inference of discrimination. only that only show

Instead, the pleadings suggest that following the August 2014 deposition, Plaintiff stopped showing up to work due to an alleged disability.  Then, on February 8, 2015, Plaintiff's counsel informed Defendants that Plaintiff would be unable to attend the pre-termination hearing scheduled for the following day and requested an adjournment.

Even if the Court were to consider the allegations contained in paragraph 18 of the Amended Complaint, Plaintiff's claim would still fail.  In other ongoing litigation, Plaintiff's amended complaint alleged similar derogatory language, and in fact, in opposition to summary judgment, Plaintiff relied upon the very deposition testimony that serves as the factual basis for the comments alleged in paragraph 18. *See Dotson v. City of Syracuse*, No. 18-1020, 2019 WL

978050, *4 (2d Cir. Feb. 27, 2019). Absent from Plaintiff's Amended Complaint in this action, however, is any plausible nexus between those comments and Plaintiff's termination. Rather, the Amended Complaint makes clear that, at the deposition in August of 2014, Plaintiff learned that outside of her presence, her current and former supervisors "had used disparaging terms about women and minorities . . . while on and off duty, in the presence of co-workers and in public." Dkt. No. 17 at ¶ 18. Plaintiff claims that she notified Defendant Fowler about this conduct on August 18, 2014 and that learning about this conduct had rendered her disabled and unable to work. *See id.* Plaintiff fails to allege any additional instances of alleged discriminatory conduct from August 18, 2014 through the date of her termination on February 9, 2015 (undoubtedly because she was absent from work during this entire period). Such an extended period between the alleged discriminatory conduct and Plaintiff's termination is insufficient to give rise to an inference of discrimination. *See Deebs v. Alstom Transp., Inc.*, 550 F. Supp. 2d 385, 392 (W.D.N.Y. 2008) (citing cases).

Drawing all reasonable inferences in Plaintiff's favor, the Amended Complaint fails to plausibly plead a claim of discrimination under either Section 1981 or the NYSHRL. Accordingly, the Court grants Defendants' motion to dismiss as to Plaintiff's first and sixth causes of action.

## E.    Second and Seventh Claims - NYSHRL and § 1981 Retaliation

Retaliation claims brought pursuant to 42 U.S.C. § 1981 and the NYSHRL are analyzed pursuant to Title VII principles. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citations omitted). For a retaliation claim to survive a motion to dismiss, the "plaintiff must plausibly allege that '(1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed

13

discrimination.'" *Isbell v. City of New York*, 316 F. Supp. 3d 571, 592 (S.D.N.Y. 2018) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015)) (other citation omitted).

In the present matter, Plaintiff alleges that Defendants retaliated against her because she informed Defendant Fowler that Defendants Trudell and her former supervisor Sweeney admitted that they had previously used discriminatory language. *See* Dkt. No. 17 at ¶ 18. Plaintiff claims that this complaint to Defendant Fowler constituted her protected activity. Drawing all reasonable inferences in Plaintiff's favor, Plaintiff has failed to allege a plausible claim of retaliation. As the Amended Complaint makes clear, from the time that she made this complaint to Defendant Fowler (August 18, 2014) through the date of her termination (February 9, 2015), Plaintiff was unable to work because of an alleged disability. The sixth months between the alleged protected activity and her termination is too attenuated to establish that the adverse employment action was the product of a retaliatory motive absent other supporting factual allegations. *See Brown v. City of New York*, 622 Fed. Appx. 19, 20 (2d Cir. 2015) (citing cases); *see also Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (noting that courts "have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation") (citing cases).

Based on the foregoing, the Court grants Defendants' motion to dismiss as to Plaintiff's NYSHRL and Section 1981 retaliation claims.

**F.      Third Claim - § 1983 Hostile Work Environment**

Courts apply the same analysis to claims of hostile work environment under Title VII and Section 1983. *Demoret v. Zegarelli*, 451 F.3d 140, 148 (2d Cir. 2006). "To state a hostile work

environment claim in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive, that is, . . . the conduct creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex [or race],'" *Patane*, 508 F.3d at 113 (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)), or because of any other characteristic protected by Title VII, see *Gregory*, 243 F.3d at 692 (indicating that any characteristic protected by Title VII is sufficient to satisfy the third element).

"In determining whether conduct constitutes a hostile work environment, the Court must consider the frequency and severity of the discriminatory conduct, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance." *Salmon v. Pliant*, 965 F. Supp. 2d 302, 305 (W.D.N.Y. 2013) (citations omitted). "[A] few isolated incidents of 'boorish or offensive use of language' are generally insufficient to establish a hostile work environment." *Id.* (citations omitted). The court must review the totality of the circumstances, and may consider incidents that are facially neutral, "so long as a reasonable fact-finder could conclude that they were, in fact, based on sex [or race]." *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002) (collecting cases). However, the Court must exclude from its consideration "personnel decisions that lack a linkage or correlation to the claimed ground of discrimination" because "[e]veryone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude." *Id.*; *see also Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) (holding that objectionable but facially sex-neutral behavior by one person could not be considered in a hostile work environment claim where there was no evidence of that person's bias).

Plaintiff has failed to plead a claim for a hostile work environment. First, the allegations of derogatory language are insufficient to state a claim for a hostile work environment. This is the kind of "boorish or offensive use of language" that are "generally insufficient to establish a hostile work environment." *Salmon*, 965 F. Supp. 2d at 305. Plaintiff does not allege that this language was frequent or physically threatening, does not allege any instance of personal humiliation and does not allege that this language affected any personnel decisions. In fact, Plaintiff has failed to allege that there were any specific incidents that were motivated by race or gender, and as discussed above, has failed to plead any link between these comments and her termination. Plaintiff has further failed to persuade the Court that these allegations are different from the ones already at issue in the parallel litigation.

Moreover, Plaintiff has failed to plead a claim for a hostile work environment on the basis of the surveillance allegations in paragraph 17 of the Amended Complaint. Plaintiff alleged that she was "subjected to extensive, intrusive, and secret retaliatory and discriminatory surveillance by conduct including, but not limited to: surreptitiously recording and monitoring her daily movements, persons she spoke with, computer usage, statements and expressions she made, usage of sick time, and other invasions of Plaintiff's privacy." Dkt. No. 17 at ¶ 17. She further alleges that these activities "extended over a period of over a year or more." *Id.* Despite these allegations, Plaintiff fails to allege any facts plausibly suggesting that these activities were done because of her membership in a protected class. Plaintiff has wholly failed to suggest that this surveillance was connected to her sex or race, other than to state that such surveillance was "retaliatory and discriminatory" in a conclusory manner. Such conclusory pleading does not satisfy pleading requirements to withstand a motion under Rule 12(b)(6).

Finally, as discussed above, Plaintiff was absent from the workplace from August 18,

2014 until her termination on February 9, 2015. As such, all of the conduct alleged in support of her hostile work environment claim necessarily occurred at the latest in August of 2014. Plaintiff filed her complaint in this matter on February 8, 2018. *See* Dkt. No. 1. Although Plaintiff's termination occurred within the three-year statute of limitations, Plaintiff has failed to plausibly alleged that Defendants terminated her because of any protected characteristic. Rather, the Amended Complaint makes clear that Plaintiff was terminated after her alleged disability rendered her unable to return to work. Therefore, since Plaintiff's termination was not "'part of the same actionable hostile work environment practice,'" it may not be considered in connection with this claim. *See Gutierrez v. City of New York*, 756 F. Supp. 2d 491, 500 (S.D.N.Y. 2010) (quotation omitted). As such, all of the alleged hostile conduct occurred outside of the three-year statute of limitations applicable to this claim.[3]

Based on the foregoing, the Court grants Defendants' motion to dismiss as to Plaintiff's hostile work environment claim.

## G. Fourth Claim - § 1983 First Amendment

To establish a retaliation claim under Section 1983 in violation of a public employee's First Amendment rights, a plaintiff must show that: "(1) his or her speech was constitutionally protected; (2) he or she suffered an adverse employment action; and (3) a causal connection exists

---

[3] In her response to the pending motion, Plaintiff contends that her hostile work environment claim is timely because claims brought pursuant to 42 U.S.C. § 1981 are subject to a four-year statute of limitations. *See* Dkt. No. 32 at 10. While Plaintiff is correct regarding the statute of limitations applicable to claims brought pursuant to Section 1981, her argument ignores the fact that the Amended Complaint makes clear that she brought her hostile work environment claim pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 17 at ¶¶ 31-34. Even assuming Plaintiff had pled a claim of hostile work environment under Section 1981, the claim would fail for all of the reasons discussed above and because claims against state actors must be brought pursuant to Section 1983, not Section 1981. *See Duplan v. City of New York*, 888 F.3d 612, 619-21 (2d Cir. 2018) (joining "nine of our sister Circuits in concluding that § 1981 does not provide a separate private right of action against state actors").

between the speech and the adverse employment action." *Washington v. Cnty. of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004). In determining whether a plaintiff's speech was constitutionally protected, the court must determine "whether [he] spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (citation omitted). This requires two separate determinations: "(1) that the employee speak as a citizen, and (2) that the employee speak on a matter of public concern." *Kelly v. Huntington Union Free Sch. Dist.*, 675 F. Supp. 2d 283, 291 (E.D.N.Y. 2009) (citing *Sousa v. Roque*, 578 F.3d 164, 170 (2d Cir. 2009)). "If either of these requirements is not met, then plaintiff's First Amendment retaliation claim must fail as a matter of law." *Id.*

"Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999). Speech relates to a matter of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Griffin v. City of N.Y.*, 880 F. Supp. 2d 384, 401 (E.D.N.Y. 2012) (citations omitted).

As the Supreme Court has explained, conducting the inquiry into whether speech is made "as a citizen" has sometimes proved difficult because of the enormous variety of factual situations that may arise in such cases. *See Garcetti*, 547 U.S. at 418 (quotation omitted). The inquiry is a "practical one," for which the Supreme Court has not articulated a comprehensive framework to define whether speech is in the course of an employee's duties. *See id.* at 424. Indeed, because the inquiry is fact-bound, courts sometimes defer resolution of this question because the record is not sufficiently developed or disputes of fact exist precluding resolution of this question as a matter of law. *See, e.g.*, *Smith v. New York City Dep't of Educ.*, No. 09-cv-9256, 2011 WL

5118797, *7 (S.D.N.Y. Oct. 28, 2011) (explaining that "[a]ny reliable conclusion would require evidence of precisely what was said and to whom it was communicated"); *Caraccilo v. Vill. of Seneca Falls*, 582 F. Supp. 2d 390, 407 (W.D.N.Y. 2008). Nevertheless, the Second Circuit has recognized that the question of "[w]hether the employee spoke solely as an employee and not as a citizen is . . . largely a question of law for the court." *Jackler v. Byrne*, 658 F.3d 225, 237 (2d Cir. 2011).

In the present matter, the Amended Complaint makes clear that Plaintiff's speech that led to the alleged retaliation did not involve a matter of public concern. Although the Amended Complaint is less than clear, Plaintiff appears to allege that informing Defendant Fowler on August 18, 2014 of the disparaging and discriminatory terms that others had used in the workplace is the protected speech. *See* Dkt. No. 17 at ¶ 18. The law is clear that "when a public employee airs a complaint or grievance, or expresses concern about misconduct, to his or her immediate supervisor . . . he or she is speaking as an employee and not as a citizen; in such cases, the First Amendment does not protect the employee's speech from discipline or retaliation by the employer." *Weintraub v. Board of Educ. Of the City of New York*, 489 F. Supp. 2d 209, 219 (E.D.N.Y. 2007). Plaintiff claims in her Amended Complaint that her various "complaints addressed widespread wrongdoing and unlawful conduct of the police force and thus concerned a matter of public interest." Dkt. No. 17 at ¶ 36. Plaintiff's complaints and various lawsuits, however, were all in regard to alleged discrimination against her. Absent from Plaintiff's Amended Complaint in the present matter is a plausible allegation that she was seeking to redress system-wide discrimination. *See Bates v. Bigger*, 56 Fed. Appx. 527, 530 (2d Cir. 2002) ("Individual complaints of discrimination, which do not allege system-wide discrimination, do not involve matters of public concern"). As such, Plaintiff's speech was not protected for purposes of

her First Amendment retaliation claim.

Even assuming that Plaintiff could allege protected speech, this claim is still subject to dismissal because Plaintiff has failed to allege a plausible connection between her termination and the alleged protected speech. As discussed above, on August 18, 2014, Plaintiff complained to Defendant Fowler about alleged sexually and racially disparaging terms Defendant Sweeney and Trudell had allegedly admitted using outside of Plaintiff's presence. During this same meeting, Plaintiff informed Defendant Fowler that learning about this conduct had rendered her disabled and that she was unable to work. The sixth months between the her last alleged protected activity and her termination is too attenuated to establish an inference that the adverse employment action was the product of a retaliatory motive absent other supporting factual allegations. *See Brown v. City of New York*, 622 Fed. Appx. 19, 20 (2d Cir. 2015) (citing cases).

Based on the foregoing, the Court grants Defendants' motion to dismiss as to Plaintiff's First Amendment retaliation claim.

**H.      Fifth Claim - § 1983 *Monell* Liability**

"Although municipalities are considered 'persons' for purposes of Section 1983, a local government such as [a] County . . . may not be held liable under Section 1983 unless the challenged action was performed pursuant to a municipal policy or custom." *Powers v. Gipson*, No. 04-CV-6338, 2004 WL 2123490, *2 (W.D.N.Y. Sept. 14, 2004) (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978)). This is because "[m]unicipalities are not subject to Section 1983 liability solely on the basis of a respondeat superior theory." *Powers*, 2004 WL 2123490, at *2; *Harris v. Howard*, No. 08 Civ. 4837, 2009 WL 3682537, *2 (S.D.N.Y. Oct. 30, 2009) ("A municipality may not be held liable under Section 1983 on the basis of respondeat superior"). As a result, to demonstrate *Monell* liability, a plaintiff must allege a violation of constitutional rights

by employees of the municipality and "(1) 'the existence of a municipal policy or custom . . . that caused his injuries beyond merely employing the misbehaving officer[s]'; and (2) 'a causal connection - an affirmative link - between the policy and the deprivation of his constitutional rights.'" *Harper v. City of New York*, 424 Fed. Appx. 36, 38 (2d Cir. 2011) (quoting *Vippolis v. Vill. Of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)) (internal quotation marks omitted); *see also Harris*, 2009 WL 3682537, at *2 ("In order to plead a claim under 42 U.S.C. § 1983 against a municipality, plaintiff must allege that a municipal policy or custom caused the deprivation of his constitutional rights").  "A plaintiff may plead a municipal policy or custom by alleging: (1) a formal policy, promulgated or adopted by the entity; or, (2) that an official with policymaking authority took action or made a specific decision which caused the alleged violation of constitutional rights; or (3) the existence of an unlawful practice by subordinate officials that was so permanent or well settled so as to constitute a 'custom or usage,' and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials." *Shepherd v. Powers*, No. 11 Civ. 6860, 2012 WL 4477241, *9 (S.D.N.Y. Sept. 27, 2012) (internal quotation marks omitted).

Plaintiff bases her claim under *Monell* solely upon the allegations that the "discriminatory hiring, discipline, lack of promotion, retaliation, and disparate treatment of women and minority employees of the City of Syracuse Police Department is so pervasive and widespread that it has the effect of a custom, practice and/or policy, harming the Plaintiff."  Dkt. No. 17 at ¶ 41.  Plaintiff alleges that "Defendant Fowler has final policymaking authority" and that Defendants "knew of the past and present discriminatory practices and policies of the City of Syracuse Police Department and did not have and have not acted to correct same."  *Id.* at ¶ 43. These are wholly conclusory allegations because Plaintiff has not pleaded any conduct, any

policy, or any practice at all, let alone a discriminatory one "so pervasive" that it has the effect of a custom, practice or policy.  Therefore, Plaintiff has failed to adequately plead a claim under *Monell*.

Moreover, courts have found that a *Monell* claim is generally foreclosed when a plaintiff has suffered no constitutional violation at the hands of an individual defendant.  *See Matican v. City of New York*, 524 F.3d 151, 154 (2d Cir. 2008).  In such cases, a plaintiff's *Monell* claim survives only if "the injuries complained of are not solely attributable to the actions of named individuals," *Barrett v. Orange County Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999), or where the individual defendants were dismissed from the case on immunity grounds, *see Curley v. Vill. of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001).  Here, Plaintiff's Amended Complaint is not subject to either exception to the general rule regarding *Monell* claims; and, therefore, this claim is subject to dismissal on this alternative ground.

Based on the foregoing, the Court grants Defendants' motion to dismiss as to Plaintiff's *Monell* claim.

## I.     Denial of Reasonable Accommodation

In her eighth cause of action, Plaintiff claims Defendants violated her constitutionally protected rights by not affording Plaintiff "an opportunity to have a pre-deprivation hearing to contest the discharge of her employment due to the unreasonable and unlawful refusal to extend her a reasonable accommodation in the form of an adjournment for her disability."  Dkt. No. 17 at ¶ 53.  In their motion, Defendants argue that this claim is simply a disability discrimination claim disguised as a constitutional claim and, therefore, it was required to be brought under the Americans with Disabilities Act.  *See* Dkt. No. 22-2 at 14-15.  In her response, Plaintiff contends that "the Constitution is absolutely violated when the challenged action(s) is motivated by 'either

discriminatory animus or ill will due to disability.'" Dkt. No. 32 at 13 (quoting *Garcia v. SUNY Health Sciences Ctr. of Brooklyn*, 280 F.3d 98 (2d Cir. 2001)).

While Plaintiff has accurately quoted from the *Garcia* decision, the selected quote is taken entirely out of context and is irrelevant. In *Garcia*, 280 F.3d at 109-10, the Second Circuit found that in enacting Title II of the ADA, Congress had exceeded its authority under Section 5 of the Fourteenth Amendment in broadly abrogating Eleventh Amendment sovereign immunity. The Court found that sovereign immunity could still be abrogated under Title II of the ADA if a plaintiff could establish "that the Title II violation was motivated by discriminatory animus or ill will based on plaintiff's disability." *Id.* at 111. As such, the language upon which Plaintiff relies was stated in the context of determining whether money damages against the state are available under Title II of the ADA. The language does not support Plaintiff's position that her disability discrimination claim can proceed under 42 U.S.C. § 1983. Indeed, the courts have uniformly held that disability discrimination claims cannot proceed under Section 1983 because there are specific statutes that provide for such relief. *Fierro v. New York City Dep't of Educ.*, 994 F. Supp. 2d 581, 590 (S.D.N.Y. 2014) (holding that "freedom from discrimination on the basis of disability is a right secured by statute [42 U.S.C. § 12131 *et seq.*] (the "Americans with Disabilities Act" or "ADA"); . . . not by the Constitution"), *appeal dismissed*, No. 14-742 (2d Cir. Apr. 9, 2014); *EC ex rel. RC v. Cnty. of Suffolk*, 882 F. Supp. 2d 323, 355 (E.D.N.Y. 2012) (holding that the "ADA has its own right of enforcement and, consequently, an ADA action may not be brought pursuant to 42 U.S.C. § 1983"); *Pape v. Bd. of Educ. of the Wappingers Cent. Sch. Dist.*, No. 07 Civ. 8828, 2009 WL 3151200, *6 (S.D.N.Y. Sept. 29, 2009) (granting motion to dismiss Section 1983 claim because "[t]he broad discriminatory claims alleged by Plaintiffs are, at best, the type of alleged discrimination that . . . the ADA [is] designed to protect against, not the Equal Protection

Clause") (internal quotation marks omitted); *see also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (holding that "[a] § 1983 action may not . . . be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement"); *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 368 (2001) ("If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause").

As Defendants correctly argue, Plaintiff cannot circumvent the administrative exhaustion requirements of the ADA and significantly shorter statute of limitations by cloaking her failure to accommodate claim in constitutional terms. Accordingly, the Court grants Defendants' motion to dismiss as to Plaintiff's eighth cause of action.

**J.      Rehabilitation Act - 29 U.S.C. § 794(a) Discrimination Based on Disability**

"The Rehabilitation Act provides that '[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'" *Quadir v. N.Y.S. Dep't of Labor*, 39 F. Supp. 3d 528, 538 (S.D.N.Y. 2014) (quoting 29 U.S.C. § 794). "'Apart from the Rehabilitation Act's limitation to denials of benefits "solely" by reason of disability and its reach of only federally funded—as opposed to "public"—entities, these provisions purport to impose precisely the same requirements' as the ADA and are analyzed under the same legal standards." *Id.* (quoting *Cercpac v. Health & Hosps. Corp.*, 147 F.3d 165, 167 (2d Cir. 1998)). "The ADA requires employers to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [its] business.'" *Id.* (quoting 42 U.S.C. §

12112(b)(5)(A)). "Similarly, regulations promulgated under the Rehabilitation Act by the Department of Health and Human Services require recipients of federal funds to 'make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped . . . employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program.'" *Id.* at 538-39 (quoting 45 C.F.R. § 84.12(a) (1994)) (other quotation omitted).

"An employee suing for failure to make such reasonable accommodations must establish four elements to make a *prima facie* case: '(1) plaintiff is a person with a disability under the meaning of the [Rehabilitation Act]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" *Quadir*, 39 F. Supp. 3d at 539 (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004)). "'[T]he determination of whether a particular modification is "reasonable" involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it.'" *Id.* (quoting *Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995)).

In the present matter, the Court finds that Plaintiff's Rehabilitation Act claim is subject to dismissal for several reasons. First, notably absent from Plaintiff's Amended Complaint is any allegation setting forth facts suggesting that she would have been able to perform the essential functions of her job with a reasonable accommodation. Rather, Plaintiff simply alleges that Defendants' conduct rendered her disabled and unable to work for the six months leading up to her termination. "Courts have consistently ruled that 'an employee cannot be considered otherwise qualified when she is unable to report to work at the time required, because she is not

able to perform the essential functions of her job.'" *Lewis v. New York City Police Dep't*, 908 F. Supp. 2d 313, 327 (E.D.N.Y.2012), *aff'd*, 537 Fed. Appx. 11 (2d Cir. 2013); *see also, e.g., Micari v. Trans World Airlines, Inc.*, 43 F. Supp. 2d 275, 281 (E.D.N.Y. 1999), *aff'd*, 205 F.3d 1323 (2d Cir. 1999) (collecting cases). "Indeed, courts have specifically noted that '[t]he ADA does not require employers to tolerate chronic absenteeism even when attendance problems are caused by an employee's disability.'" *Id.* (quoting *Mescall v. Marra*, 49 F. Supp. 2d 365, 374 n.18 (S.D.N.Y. 1999)); *Pierce v. Highland Falls–Fort Montgomery Central Sch. Dist.*, No. 08-civ-1948, 2011 WL 4526520, *5 (S.D.N.Y. Sept. 28, 2011) (noting that the plaintiff's "persistent absence from work, alone, precludes him from being considered qualified under the ADA" even assuming that the plaintiff's absences were a result of a recognized disability). Here, Plaintiff has failed to allege that she could perform an "essential function" of her employment, *i.e.*, showing up for work. *See Rinaldi v. Quality King Dist., Inc.*, 29 F. Supp. 3d 218, 227 (E.D.N.Y. 2014) (citation omitted).

Second, Plaintiff fails to allege that she even requested a reasonable accommodation or that Defendants refused to grant such an accommodation. "'[A] defendant is not liable for failure to provide a reasonable accommodation . . . if the plaintiff does not ask for an accommodation, or fails to provide information necessary to assess the request for an accommodation.'" *Khalil v. Pratt Institute*, No. 16-cv-6731, 2019 WL 1052195, *7 (E.D.N.Y. Feb. 13, 2019) (quoting *Grabin v. Marymount Manhattan Coll.*, No. 12 Civ. 3591, 2014 WL 2592416, *14 (S.D.N.Y. June 10, 2014)). The regulations "issued pursuant to the ADA, which are informative to resolution of claims under the rehabilitation Act, contemplate an ongoing, informal, and interactive process that 'should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *Quadir*, 39 F. Supp. 3d at 539-40

(quoting 29 C.F.R. § 1630.2).  These principles indicate that "'[w]hat matters under the . . . [Rehabilitation Act] are not formalisms about the manner of the request, but whether the [requestor or his representative] provides the [requestee] with enough information that, under the circumstances, the [requestee] can be fairly said to know of both the disability and desire for an accommodation.'"  *Id.* (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999)).

Here, Plaintiff fails to allege that she even requested an accommodation.  Rather, Plaintiff alleges that she simply informed Defendant Fowler that Defendants' conduct had rendered her disabled and then proceeded to be absent from work for the sixth months leading to her termination.  Nothing in the Amended Complaint suggests that Plaintiff requested an accommodation that would have permitted her to return to work and that such an accommodation was refused.  Absent such facts, Plaintiff's Rehabilitation Act is subject to dismissal.

Based on the foregoing, the Court grants Defendants' motion to dismiss as to Plaintiff's Rehabilitation Act claim.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **GRANTED**; the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 7, 2019
      Albany, New York

Mae A. D'Agostino
U.S. District Judge